IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 17-80029-CV-MIDDLEBROOKS/BRANNON

Tom Mahoney, individually and on
behalf of a class,

        Plaintiff,

v.

                            Class Action

TT of Pine Ridge, Inc.,

        Defendant.

_____/

**DEFENDANT TT OF PINE RIDGE, INC. D/B/A NAPLES NISSAN'S
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1)
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Defendant, TT of Pine Ridge, Inc. d/b/a Naples Nissan ("Naples Nissan") hereby submits this Memorandum of Law in Support of its Motion for Summary Judgment, or, in the Alternative, to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1).

**I.    INTRODUCTION**

Plaintiff Thomas Mahoney ("Plaintiff") asserts in this putative class action that he is entitled to statutory damages under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), because Naples Nissan placed telemarketing calls to his cellular telephone number without his prior express consent. Plaintiff is wrong. Naples Nissan never called Plaintiff's wireless telephone. Instead, Naples Nissan employed a proprietary voicemail technology to deliver a voicemail message directly to Plaintiff's wireless service provider. As explained herein, a direct to voicemail service platform is not covered by the TCPA and Naples Nissan did not "make a call" to a wireless phone number as contemplated by Section 227, of Title 47 of the U.S. Code. What is more, Plaintiff was not charged for

- 1 -

delivery of the voicemail communication. Accordingly, summary judgment or dismissal is appropriate because Plaintiff lacks standing to assert his claims.

First, Plaintiff lacks statutory standing because the statute does not apply to the conduct at issue as a matter of law. The TCPA proscribes the use of certain equipment "to **make any call** (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). The TCPA does not impose liability for voicemail messages, delivered directly to a voicemail service provider, that never pass through a person's cellular telephone line or result in a delivery charge to the subscriber. Neither the Federal Communications Commission ("FCC"), acting pursuant to its rulemaking authority, nor any court has applied the statute in this way.

Second, even if the TCPA applied to the conduct at issue, Plaintiff lacks Article III standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). A mere technical violation of a statute does not cause the type of injury-in-fact contemplated by Congress, and that is at most all that is present here.

The Court should, respectfully, grant summary judgment for Naples Nissan as a matter of law, or dismiss this case for lack of subject matter jurisdiction.

## II.      PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that beginning in the fall of 2016, Plaintiff received three to six prerecorded telemarketing calls from Naples Nissan on his cellular phone. (Dkt. No. 1, ¶¶ 22, 24.) Plaintiff alleges, on information and belief, that the calls were placed through an automatic telephone dialing system ("ATDS") without his prior express written consent. (*Id.* ¶ 25.)

Plaintiff asserts that his "cell phone was unavailable for other use while processing" the calls, that Naples Nissan "seized Plaintiff's cellular telephone line," that his "cellular telephone line was

occupied" by the calls, that the "seizure of Plaintiff's cellular telephone line was intrusive," and that he was "inconvenienced by [Naples Nissan's] calls, by among other things, hearing his cell phone ring and having to check the calling party." (*Id.* ¶ 14.)

Based on these allegations, Plaintiff seeks to represent a nationwide class of all persons whose cellular telephones Naples Nissan called with an ATDS or an artificial or prerecorded voice. (*Id.* ¶ 28.)

### III. SUMMARY OF UNCONTROVERTED FACTS

#### A. The Voicemail Technology At Issue Bypasses Cellular Phone Lines.

Stratics Networks, Inc. ("Stratics") is a provider of various teleservices software and related products, including a proprietary direct to voicemail insertion solution. (Stmt. of Material Facts ("SMF") ¶ 1.)

Stratics' voicemail insertion solution bypasses the wireless telephone and telephone subscriber altogether, creating a direct communication between Stratics' servers and the voicemail system of the carrier telephone company. (*Id.* ¶ 2.) Stratics' proprietary technology, which interconnects the carrier telephone companies' voicemail servers directly with Stratics' internal network, allows Stratics' computers to communicate directly with the carrier telephone companies' computers without placing a direct call to the subscriber. (*Id.* ¶ 3.). Voicemails delivered by the voicemail insertion solution are not delivered through telephone calls to the recipient. (*Id.* ¶ 4.)

Stratics' voicemail insertion technology delivers voicemail messages without a resulting charge to the subscriber for such delivery, or appearing as a received call on the cellular telephone bill. (*Id.* ¶ 5.) During the transmission of a voicemail message, the software uses a data channel to initiate the connection to voicemail servers. (*Id.* ¶ 7.) The voicemail insertion technology creates a direct path between the servers and the carrier telephone company's voicemail infrastructure itself, only passing a message to the server if the voicemail is set up and is capable of accepting messages at that moment. (*Id.* ¶ 8.) Subscribers may either retrieve the message from the carrier telephone companies' voicemail

service if the subscriber chooses to do so at a time of the subscriber's choosing, or to simply delete the message. (*Id.* ¶ 9.)

### B. Verizon's Voicemail Service Does Not Reside On Its Subscribers' Phones.

Plaintiff subscribes to Verizon Wireless for his cell phone service. (*Id.* ¶ 10.) In order to receive voicemail messages, a Verizon subscriber must set up his or her voicemail service when he or she activates his or her cellular telephone service. (*Id.* ¶ 11.). Voicemail messages for Verizon subscribers are stored by third party voicemail service providers. (*Id.* ¶ 12.) A Verizon subscriber must dial a separate number corresponding to one of the service providers (*86 if dialing from within the United States) and enter a password to retrieve his voicemail messages. (*Id.* ¶ 13.) Verizon does not bill its subscribers for delivery of the messages. (*Id.* ¶ 14.)

### C. Naples Nissan Delivered Voicemail Messages To A Voicemail Service, Not Plaintiff's Cell Phone.

Naples Nissan signed up to use the Stratics software and platform for delivery of voicemail messages through All About the Message LLC ("AATM"), a distributor of Stratics. (*Id.* ¶ 15.) Naples Nissan used Stratics' platform to deliver the voicemail message described in the Complaint directly to Plaintiff's voicemail service. (*Id.* ¶ 16.) Naples Nissan's messages were left directly with the voicemail service provider for Plaintiff to access at a time of his choosing. (*Id.* ¶ 18.)

## IV. STATUTORY AND REGULATORY BACKGROUND.

### A. The TCPA.

In 1991, Congress enacted the TCPA by adding section 227 to Title II of the Communications Act of 1934 ("Communications Act"). *See* Pub. L. No. 102-243, 105 Stat. 2394 (1991); 47 U.S.C. § 227. Among other things, the TCPA regulates the use of an ATDS and prerecorded or artificial voice messages. As relevant here, the TCPA provides that it is "unlawful for any person within the United States (A) *to make any call* (other than a call made for emergency purposes or made with the prior

express consent of the called party) using any [ATDS] or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  Congress also directed the FCC to "prescribe regulations to implement the requirements of this subsection . . . ."  47 U.S.C. § 227(b)(2). The FCC, in turn, reiterated that there can be no liability unless a call is placed "[t]o any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."  47 C.F.R. § 64.1200(a)(1)(iii).  In addition to lawsuits by the FCC and state attorneys general, the TCPA creates a private right of action to enforce its terms.  *See* 47 U.S.C. § 227(b)(3) (providing for statutory damages of no less than $500 per call and/or injunctive relief).

  **B.**  **Voicemail Service Is Not Regulated Under The Communications Act.**

Cellular telephone and other radio (or wireless) common carrier services are referred to collectively as common carrier services and are governed by Title II of the Communications Act, as amended by the Telecommunications Act of 1996.  47 U.S.C. § 201 *et seq.*; Pub. L. No. 104-104, 110 Stat 56 (1996).  Title II of the Communications Act, which includes the TCPA, expressly does *not* regulate voicemail.

The Communications Act identifies two categories of services that common carriers provide: "telecommunications services" and "information services."  *Id.*  "The term 'telecommunications service' means the offering of telecommunications[1] for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used."  47 U.S.C. § 153(53).

---

[1] In turn, the term "telecommunications" means "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received." 47 U.S.C. § 153(50).  In other words, a traditional phone call unbundled from any other service.

In contrast, "[t]he term 'information service' means the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications . . . ." 47 U.S.C. § 153(24).

Information services include so-called "enhanced services." *See Application of BellSouth Corporation, BellSouth Telecommunications, Inc., and BellSouth Long Distance, Inc., for Provision of In-Region, InterLATA Services in Louisiana*, CC Docket No. 98-121, Memorandum Opinion and Order, 13 F.C.C. Rcd. 20599 ¶ 314 (1998) ("*BellSouth Louisiana Order*") (stating that "the definition of 'information services' under the 1996 Act includes those services previously classified as 'enhanced services,'" and noting that information services and telecommunications services are "mutually exclusive."); *see also U.S. W. Commc'ns v. Hix*, 183 F. Supp. 2d 1249, 1253 (D. Colo. 2000) ("[T]he FCC has confirmed that 'information services' are synonymous with 'enhanced services.'").

The distinction between "telecommunications services" and "information or enhanced services" is crucial; telecommunications services are subject to Title II of the Communications Act, whereas information or enhanced services are expressly "not regulated under title II of the Act." 47 C.F.R. § 64.702(a). And, for purposes of this Motion, the FCC has determined that voicemail is an enhanced service, and not a telecommunications service. *BellSouth Louisiana Order*, 13 F.C.C. Rcd. 20599 ¶ 314; *see also MCI Telecommunications Corp. v. Sprint-Florida Inc.*, 139 F. Supp. 2d 1342, 1346 (N.D. Fla. 2001) (noting that the "FCC has . . . determined that voice mail is "information service," not "telecommunications service," within the meaning of the Act's definitions."); *U.S. W. Commc'ns*, 183 F. Supp. 2d at 1253 ("[V]oicemail is an 'enhanced service.'"); *In the Matter of Implementation of the Telecommunications Act of 1996: Telecommunications Carriers' Use of Customer Proprietary Network Information and Other Customer Information,* CC Docket Nos. 96-115 and 96-149, Order and Further Notice of Proposed Rulemaking, 13 F.C.C. Rcd. 8061, ¶ 72 (1998) ("Because information services

generally, and in particular those few identified in the record (*i.e.*, call answering, voice mail or messaging, voice storage and retrieval services, fax store and forward, and Internet access services), are provided to consumers independently of their telecommunication service, they neither are used by the carrier nor necessary to the provision of such carrier's service.").

Thus, Title II of the Communications Act, which includes the TCPA, expressly does not regulate voicemail services.

## V. LEGAL STANDARDS

### A. Summary Judgment.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)(1)(A)). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585 (1986). Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586. The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a

*genuine issue for trial.*" *Id.* at 587 (citing FED. R. CIV. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990). If the nonmoving party fails to make a sufficient showing on an essential element of his case for which he has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 323.

### B. Motion To Dismiss For Lack Of Subject Matter Jurisdiction.

A motion to dismiss pursuant to Rule 12(b)(1) raises the issue of subject matter jurisdiction. *See Klayman v. Obama*, No. 16-80087, 2016 WL 4431530, at *2 (S.D. Fla. June 16, 2016) (Middlebrooks, J.). Federal courts are of limited jurisdiction and are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution. *Lance v. Coffman*, 549 U.S. 437, 439 (2007)). Article III of the Constitution confines the "judicial Power" of the United States to "Cases" and "Controversies." U.S. Const. art. III, § 2.

A plaintiff properly invokes federal question jurisdiction when she pleads a colorable claim "arising under" the Constitution or laws of the United States. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006); *Bell v. Hood*, 327 U.S. 678, 681-85 (1946) (holding that a claim invoking federal-question jurisdiction may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.,* if it is "immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous."). A defendant may attack subject matter jurisdiction in two different ways—facially and factually. *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999). Where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). In response to a factual attack, a court should dismiss the complaint for lack of

subject matter jurisdiction "'where the federal claim is clearly immaterial or insubstantial.'" *McMaster*, 177 F.3d 936, 940 (11th Cir. 1999) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). When a Rule 12(b)(1) motion constitutes a factual attack on subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Lawrence*, 919 F.2d at 1529.

Moreover, a "'party invoking federal jurisdiction bears the burden' of establishing that he has standing to sue." *Am. Civil Liberties Union of Fla., Inc. v. Dixie Cnty., Fla.*, 690 F.3d 1244, 1247 (11th Cir. 2012) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). A plaintiff "must satisfy three requirements to have standing under Article III of the Constitution:  (1) 'injury-in-fact'; (2) 'a causal connection between the asserted injury-in-fact and the challenged action of the defendant'; and (3) 'that the injury will be redressed by a favorable decision.'" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)). An injury-in-fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.  "An interest unrelated to injury in fact is insufficient to give a plaintiff standing." *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000).  Thus, a plaintiff without an injury in fact lacks Article III standing, and the federal courts do not have jurisdiction over his or her complaint. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

## VI.   ARGUMENT

The TCPA governs the use of certain automated technology to place calls to consumers' phones; it does not impose liability for voicemail messages that do not pass through consumers' phone lines. Indeed, voicemail service is expressly unregulated.  Neither the FCC, acting pursuant to its rulemaking authority, nor any federal or state court has ruled that voicemail message delivery platforms that bypass

149643.00601/105235141v.6

a phone line are subject to the TCPA.  Given that Plaintiff carries the burden of proving that there are certain facts creating a genuine issue for trial, and because Plaintiff cannot meet that burden here, the Court should find that Plaintiff has failed to demonstrate that the TCPA applies to Defendant's conduct herein as a matter of law.  This is especially true here, where the facts present a novel and sweeping issue of first impression, and a finding that the TCPA applies would expose an unsuspecting party to potential ruinous statutory damages.

Further, even if the statute is, without precedent, extended to cover voicemail services, Plaintiff cannot show a concrete harm required to invoke subject matter jurisdiction as a result of having received a voicemail on his carrier's voicemail service platform.  In short, summary judgment must either be granted to Naples Nissan or Plaintiff's claims dismissed.

### A. Plaintiff Lacks Statutory Standing Because The TCPA Does Not Apply To The Conduct At Issue.

The TCPA proscribes the use of certain automated equipment "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).  The statutory and regulatory structure is clear:  TCPA liability exists only when an autodialed or pre-recorded call is made to the mobile telephone number of a plaintiff or a telephone number of another wireless service for which the plaintiff is charged.  Voicemail service and the process by which voicemail is deposited on a carrier's platform for access by a subscriber is neither a call made to a mobile telephone number nor a call for delivery of which Plaintiff (or any consumer) is charged, and, indeed, is a service that is not regulated by the TCPA at all.  Accordingly, Plaintiff's TCPA claims fails for want of standing and summary judgment is appropriate as a matter of law.

### 1. Naples Nissan Did Not Make A Call To Plaintiff's Cellular Telephone Number.

The TCPA does not define the term "call," *see* 47 U.S.C. § 227(b)(1), but the FCC has explicitly stated that the TCPA's restrictions on the use of ATDS "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953-54 (9th Cir. 2009) (concluding that the FCC's interpretation—that a call includes both voice and text provided the call is made "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service . . ."—is reasonable because "the ordinary, contemporary, and common meaning of the verb 'to call' . . . in this context [is] 'to communicate with or try to get into communication with a person by a telephone.'"). Thus, in at least the context of the section governing the supposed autodialed and prerecorded calls at issue, the TCPA and the FCC contemplate that a call involves dialing a telephone number for a communication directly to the wireless handset of a subscriber.

This reasoning is further supported by the fact that the FCC has opined that "a call placed to a wireline [*i.e.*, a landline] number that is then forwarded, at the subscriber's sole discretion and request, to a wireless number or service, does not violate the ban on autodialed and prerecorded message calls to wireless numbers." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3807 ¶ 48 (2005). In other words, this section of the TCPA covers only calls made directly to wireless telephone lines. Indeed, this Court has previously noted that to state a claim under the TCPA, "a plaintiff must establish that a defendant *made any call* using an automatic telephone dialing system [or a prerecorded or artificial voice] *to his or her cellular telephone* for a non-

emergency purpose." *Reed v. Morgan Drexen, Inc.*, 26 F. Supp. 3d 1287, 1290 (S.D. Fla. 2014) (Middlebrooks, J.) (emphasis added).

Contrary to Plaintiff's assertions, Naples Nissan did not call Plaintiff's cellular telephone line. A call was not made because Plaintiff's phone number was not dialed, and his phone could not, and did not, receive any voice communication. (SMF, ¶¶ 2-9.) Instead, Naples Nissan used Stratics' direct to voicemail insertion software. (*Id.* ¶¶ 15-16.) This bypasses the telephone and subscriber altogether, creating direct communication between Stratics' servers and the voicemail system of the carrier telephone company. (*Id.* ¶ 2.) Stratics' technology interconnects the carrier telephone companies' voicemail servers directly with Stratics' internal network. (*Id.* ¶ 3.) This allows Stratics' computers to communicate directly with the carrier telephone companies' computers without ever placing a call to the subscriber. (*Id.*) Tellingly, Plaintiff, as a Verizon subscriber, must dial a separate number corresponding to an outside voicemail service provider and enter a password to retrieve his voicemail messages. (*Id.* ¶¶ 10, 12-13.)

Finally, while neither the courts nor the FCC has ruled on whether a direct to voicemail message constitutes a "call" for purposes of the TCPA, the Canadian Radio-Television and Telecommunications Commission—the FCC's Canadian analogue—has declared that "[t]he use of voicemail broadcast[2] for making telemarketing telecommunications is not currently regulated by the Commission." *Telecom Decision*, CRTC 2007-47, ¶ 471 (2007). The same common sense approach should be applied here: Not only did Naples Nissan not dial Plaintiff's cellular telephone, but the conduct at issue—the act of depositing a voicemail message directly on a voicemail service without directly dialing a cellular

---

[2] The term "voicemail broadcast" is defined as "a type of telecommunication whereby a recorded message is delivered directly into a voice mailbox without interrupting the voice mailbox subscriber's activities in real time." *Telecom Decision*, CRTC 2007-47, ¶ 471.

telephone—is expressly unregulated. Accordingly, this Court should find that Naples Nissan did not call Plaintiff's cellular telephone line.

### 2. Plaintiff Was Not Charged For Delivery Of The Voicemail Message.

Alternatively, if a plaintiff cannot demonstrate that a call was made to his cell phone, he must prove that a call was made to "any [other] service for which the called party is charged . . . ." 47 U.S.C. § 227(b)(1)(A)(iii); *see also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1257-58 (11th Cir. 2014) ("[W]e conclude that the phrase 'for which the called party is charged for the call' modifies only 'any service' and not the other terms of the series."). Because Plaintiff did not receive a call on his cellular telephone handset, he must demonstrate that he was charged when Naples Nissan delivered the message to his voicemail service.

Plaintiff cannot make this showing. Stratics' voicemail insertion technology delivers voicemail messages without showing up on the recipient's phone bill. (SMF ¶ 5.)

### 3. Plaintiff Did Not Suffer The Type Of Harm The TCPA Was Designed To Prevent.

As this Court has previously noted, "[t]he TCPA is designed to protect individual consumers from receiving intrusive and unwanted *telephone calls*." *Reed*, 26 F. Supp. 3d at 1290 (emphasis added). The TCPA was enacted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, *automated telephone calls to the home* and to facilitate interstate commerce by restricting certain uses of facsimile (fax) machines and automatic dialers." S. Rep. No. 102-178, at 1 (1991), reprinted in 1991 U.S.C.C.A.N. 1968. The TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing *calls*. *See id*. at 2. "In particular, Congress reported, '[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their *homes*.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (emphasis added) (addressing similar concerns with respect to calls to the plaintiff's

- 13 -

cellular phone, and citing TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings)). Comments made on the Senate floor by the TCPA's sponsor, Senator Hollings, reflect the intended scope of the Act: "Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." *Mims*, 565 U.S. at 384 (citing 137 Cong. Rec. 30821-30822 (1991)).

The TCPA was never designed to protect a person from the receipt of voicemails not left on the person's phone. *Voicemail* messages delivered directly to a voicemail service provider do not implicate the same concerns as autodialed *telephone calls*. There is no voice channel through which a voice communication can be made, and no function on the telephone that would allow the subscriber to answer the "call" or communicate back instantaneously. (SMF ¶¶ 2-4, 7-8.) Unlike the computerized dialing methods the statute was designed to prevent, the voicemail technology here does not directly dial or make a call to a cellular telephone line and does not involve the potential annoyance of dropped or dead air calls. Consumers have the freedom to dial into their carrier's voicemail service platform to pick up the voicemail or not, to listen to it or not, as and when they see fit, and may do so without incurring any delivery charges.

Because the conduct at issue falls outside the scope and purpose of the TCPA, Naples Nissan is entitled to judgment as a matter of law.

  **B.**  **Plaintiff Lacks Article III Standing To Assert A Claim.**

Even assuming the voicemail insertion system is covered under the TCPA (which it is not), Plaintiff's claims would fail nevertheless because Plaintiff cannot demonstrate a concrete and particularized harm, as required by the United States Constitution, by virtue of having received a voicemail message.

As discussed, Article III of the Constitution limits federal court jurisdiction to actual cases and controversies. *See* U.S. Const. art. 3, § 2; *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1204 (11th Cir. 1991). "The standing doctrine is an aspect of this case or controversy requirement and has its origins in 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Accordingly, "standing is a jurisdictional threshold question which must be addressed prior to and independent of the merits of a party's claims." *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008); *see also Stalley*, 524 F.3d at 1232.

In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), the plaintiff alleged a violation of the Fair Credit Reporting Act ("FCRA") stemming from the defendant's inaccurate reporting of the plaintiff's biographical information in a public internet directory. *Id.* at 1544. The district court had held that the plaintiff failed to show an injury based on a technical violation of the FCRA and dismissed the case for lack of standing. *Id.* The Ninth Circuit reversed, noting that "the violation of a statutory right is usually a sufficient injury in fact to confer standing," but recognizing that "the Constitution limits the power of Congress to confer standing." *Robins v. Spokeo*, 742 F.3d 409, 413 (9th Cir. 2014). The Ninth Circuit held that the plaintiff adequately alleged injury-in-fact because the plaintiff alleged the defendant "violated *his* statutory rights, not just the statutory rights of other people." *Id.* at 413-14. The Supreme Court, however, observed that the Ninth Circuit's analysis reached only whether the plaintiff's injury was particularized, not whether the injury was concrete. *Spokeo*, 136 S. Ct. at 1550.

In its analysis, the Supreme Court explained that "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547-48. The Court stated that to "establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and

particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). Regarding the concrete requirement, the Court stated that a "'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id*. The Court explained that the term "concrete" means "'real,' and not 'abstract.'" *Id*.

Here, Plaintiff has (inaccurately) alleged only that calls were made to his cellular telephone (Dkt. No. 1, ¶ 24) and he has since provided a screenshot of a "voicemail message" indicator (Dkt. No. 20, ¶ 3). Based on this unsupported allegation about the communications at issue, Plaintiff seeks fixed statutory damages—not actual damages—completely removed from any actual harm. Indeed, Plaintiff does not allege (nor could he), that the voicemail insertion resulted in a call to Plaintiff's phone or a delivery charge to Plaintiff. This is precisely the type of conjectural and abstract harm that has no place in this Court. Plaintiff's allegations, and the indisputable material facts, fall short of demonstrating an actual injury-in-fact that would give Plaintiff standing to assert federal subject matter jurisdiction.

Simply put, Plaintiff's entire purported injury is premised upon a threadbare procedural violation for which he seeks damages. Plaintiff cannot establish an invasion of a legally protected interest—the purported privacy right under the TCPA—that is "concrete and particularized," and "actual." *Spokeo*, 136 S. Ct. at 1548. At best, the plain language of the TCPA establishes only a right to privacy from telephone calls to a cellular phone, not direct to voicemail messages that never pass through the cellular phone of the called party. *See Reed*, 26 F. Supp. 3d at 1290 (citing *Mims*, 132 S. Ct. at 745)).

Accordingly, if the Court is not inclined to grant Defendant summary judgment on the legal issue presented above, the Court should find Plaintiff lacks Article III standing and dismiss his claims.

    **C.    To the Extent the Court Creates New Law, It Should Not Apply It Retroactively.**

It is telling that despite the fact that Congress directed the FCC to "prescribe regulations to implement the requirements of this subsection," the FCC has never, in any of its dozens of declaratory rulings over the TCPA's quarter-century lifespan, equated the delivery of a voicemail message with

making a call to a phone number. But even if this Court extends the TCPA, without precedent, to cover voicemail delivery, the Court should refrain from applying its rule to Naples Nissan's past conduct. *Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886 (6th Cir. 2016), is illustrative. There, a recipient of a fax advertisement brought suit under the TCPA's fax provisions for faxes that were broadcasted in November 2005 and July 2006. *Id.* at 890. The FCC later amended its definition of a fax "sender," effective August 2006. *Id.* at 891-92. Had the faxes been sent after the FCC's ruling, they would have been subject to liability. *Id.* The plaintiff filed suit, however, alleging TCPA violations for the faxes that were sent *before* the effective date of the FCC's ruling. *Id.*

The Sixth Circuit found that the defendant was not liable for the pre-ruling faxes. *Id.* at 892. The Sixth Circuit observed that courts are to "apply the law in effect at the time that they decide a case unless that law would have an impermissible retroactive effect as that concept is defined by the Supreme Court." *Id*. "If the retroactive application 'attaches new legal consequences,' such as 'impairing rights a party possessed when he acted, increasing a party's liability for past conduct, or imposing new duties with respect to transactions already completed,' then a court should refrain from a retroactive application." *Id.* (quoting *BellSouth Telecommunications, Inc. v. Se. Tel., Inc.*, 462 F.3d 650, 658 (6th Cir. 2006)). The court further noted that in making such an evaluation, courts should "take sound guidance from familiar considerations of fair notice, reasonable reliance, and settled expectations." *Id.* (citing *Landgraf v. USI Film Prod.*, 511 U.S. 244, 270 (1994)). Because retroactive application of the FCC's rules would "clearly increase" the defendant's liability for past conduct, and because the FCC itself "added that 'it is important to provide adequate time for senders to come into compliance'" with its rule, the Sixth Circuit concluded that application of the rule would be impermissibly retroactive. *Id.* (quoting *Junk Fax Regulations*, 21 FCC Rcd. 3787, 3815-16 (2006)).

Here, Naples Nissan sought out Stratics' direct to voicemail insertion technology in order to communicate in a passive, unobtrusive manner. Indeed, Stratics represented that its technology did not implicate the TCPA. (SMF ¶¶ 2, 4, at Exs. A-B, D.) To hold now that the TCPA applies to Naples Nissan's past conduct would undermine settled principles of "fair notice, reasonable reliance, and settled expectations." The Court should, respectfully, refrain from creating new precedent and then clearly increasing Naples Nissan's liability to potentially crippling levels for past conduct that it justifiably believed to be lawful.

## VII. CONCLUSION.

For these reasons, Naples Nissan respectfully requests that this Court either grant its Motion for Summary Judgment finding that the conduct at issue is not covered by the TCPA as a matter of law, or, in the alternative, dismiss Plaintiff's claims for lack of Article III standing.

## VIII. REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b), Defendant requests a hearing on the issues raised in this Motion. Defendant's motion for summary judgment raises an issue of first impression under the TCPA; that is, whether delivery of a voicemail message directly to Plaintiff's wireless service provider constitutes making a "call" within the meaning of the TCPA so as to confer upon Plaintiff standing to pursue his claims. Neither the FCC nor any court has opined on this issue. A hearing on this argument thus would assist the court in understanding the technology at issue in this matter and why the conduct alleged in the Complaint is not covered by the TCPA. Defendant estimates that this matter may be heard before the Court in sixty (60) minutes.

DATED:  March 31, 2017

        By: /s/ *Paul Sodhi*
           Paul Sodhi (Florida Bar No. 42353)
           PSodhi@BlankRome.com
           500 E. Broward Boulevard, Suite 2100
           Fort Lauderdale, FL 33394
           Tel. 954.512.1800
           Fax 954.512.1818

           Ana Tagvoryan (admitted *pro hac vice*)
           ATagvoryan@BlankRome.com
           Harrison Brown (admitted *pro hac vice*)
           HBrown@BlankRome.com
           2029 Century Park East, Sixth Floor
           Los Angeles, CA 90067
           Tel. 424.239.3400
           Fax.424.239.3434

           Patricia E. Lowry (Florida Bar No. 332569)
           Patricia.Lowry@SquirePB.com
           1900 Phillips Point West
           777 South Flagler Drive
           West Palm Beach, FL 33401
           Tel. 561.650.7200
           Fax.561.655.1509

           Attorneys for Defendant
           TT OF PINE RIDGE, INC., D/B/A NAPLES NISSAN

149643.00601/105235141v.6

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's CM/ECF system on this 31st day of March, 2017, on all counsel or parties of record, as listed below.

THE LAW OFFICE OF CHRIS R. MILTENBERGER, PLLC
Chris R. Miltenberger
chris@crmlawpractice.com
1340 N. White Chapel Blvd., Suite 100
Southlake, TX 76092
Tel.:   817.416.5060
Fax:   817.416.5062

WENZEL FENTON CABASSA, P.A.
Brandon Hill
bhill@wfclaw.com
1110 North Florida Avenue, Suite 300
Tampa, FL 33602
Tel.:   813.337.7992
Fax:   813.229.8712

Attorneys for Plaintiff
THOMAS MAHONEY

By: */s/ Paul Sodhi*
Paul Sodhi (Florida Bar No. 42353)
PSodhi@BlankRome.com
500 E. Broward Boulevard, Suite 2100
Fort Lauderdale, FL 33394
Tel. 954.512.1800
Fax 854.512.1818