**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 17-80029-CV-MIDDLEBROOKS/BRANNON**

Tom Mahoney, individually and on
behalf of a class,

                       Plaintiff,

v.

                                       Class Action

TT of Pine Ridge, Inc.,

                       Defendant.

_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR ENTRY OF FINAL APPROVAL**
**ORDER AND JUDGMENT, AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Tom Mahoney ("Plaintiff" or "Mahoney") hereby submits this unopposed Motion for Entry of Final Approval Order and Judgment, and Incorporated Memorandum of Law.

**I.      INTRODUCTION.**

Plaintiff initiated this putative class action lawsuit by filing a complaint in this Court on January 9, 2017.  Plaintiff's Complaint alleged that Defendant, TT of Pine Ridge, Inc. d/b/a Naples Nissan ("Defendant" or "Naples Nissan") placed automated telemarketing calls to his cellular telephone number, and to other members of a putative class, without prior express consent.  Accordingly, Plaintiff alleged that he and other members of the putative class were entitled to statutory damages and injunctive relief under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").[1]

_____

[1] As relevant here, the TCPA provides that it is "unlawful for any person within the United States (A) to make any call (other than a call made for emergency purposes or made with the

1

Defendant vigorously denies and denied Plaintiff's allegations, and denied that Plaintiff and the members of the putative class were entitled to any relief.  Defendant asserted that it did not "make a call" to a wireless phone number as contemplated by the TCPA.  Rather, Defendant asserted that it employed a proprietary voicemail technology to deliver a voicemail message directly to Plaintiff's wireless service provider.  Defendant averred that such conduct is contemplated neither by the TCPA nor the Federal Communications Commission's ("FCC") implementing regulations.  Plaintiff disagreed and asserted that Defendant's alleged conduct was covered by the TCPA and the FCC's implementing regulations.

Immediately after the Rule 26 conference, Plaintiff propounded extensive discovery on Defendant, regarding all automated calling and texting practices.  On the same day that Defendant responded to Plaintiff's discovery requests, Defendant filed a dispositive motion on the legal issue of whether the use of direct to voicemail insertion technology implicates the TCPA.  Defendant also filed a motion to stay proceedings pending a decision by the FCC on a petition for declaratory ruling by All About the Message, LLC ("AATM"), a distributor of the direct to voicemail insertion technology, which asked whether such technology implicates the TPCA.  Plaintiff engaged TCPA expert Randall Snyder to evaluate Defendant's contentions. Mr. Snyder's analysis and opinions were filed with the Court as part of Plaintiff's responses to Defendant's dispositive motions.

---

prior express consent of the called party) using any automatic telephone dialing system [("ATDS")] or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

While Defendant's motions were pending, Plaintiff and Defendant (collectively, the "Parties") engaged Mediator Bruce Friedman ("Mr. Friedman"). The Parties initially mediated this matter with Mr. Friedman on April 24, 2017. The Parties, through the assistance of Mr. Friedman, continued settlement discussions following the mediation and reached terms on a proposed class settlement on May 1, 2017.

The Settlement Agreement (D.E. 52-1), preliminarily approved on June 26, 2017 (D.E. 54), was the result of those discussions and arms-length negotiations. Thus, the Settlement Agreement was reached after thorough and comprehensive consideration and analysis of the factual and legal issues in dispute, informal and formal exchange of information, the strengths and weaknesses of their respective positions, the inherent risks and expenses in protected litigation, and Defendant's financial ability to satisfy a larger settlement or a potential class judgment. The Settlement Agreement is fair, reasonable, and adequate, and affords meaningful relief to the Settlement Class. (*See* Declarations of Miltenberger and Hill (D.E. 60-1, ¶49; D.E. 60-2, ¶ 25).) Class Notice was disseminated both directly and indirectly to hundreds of thousands of Settlement Class Members per the Court's Orders of June 26, 2017 (D.E. 54) and August 7, 2017 (D.E. 57), and there has not been a single objection to the Settlement Agreement. Thus, the relief requested is unopposed, and Plaintiff respectfully requests entry of the attached Final Approval Order and Judgment, and any other relief deemed just and proper.

## II.    SUMMARY OF SETTLEMENT TERMS AND THE CLAIMS PROCESS.

The Parties agreed to, and the Court ordered, the provisional certification of a Rule 23(b)(3) Settlement Class under the terms outlined below and more fully set forth in the Order Granting Preliminary Approval of Class Action Settlement Agreement ("Preliminary Approval

Order") and Settlement Agreement.  Capitalized terms are defined within the Settlement Agreement.

**A.     The Settlement Class.**

Upon Final Approval, the parties' Settlement Agreement will dispose of all claims for the following proposed class:

> All persons or legal entities in the United States who, during the Class Period, received a non-emergency call, text, or voicemail message from or on behalf of Naples Nissan through the use of an automatic telephone dialing system or an artificial or prerecorded voice.

(Settlement Agreement § 2.42.)

Members of the Settlement Class who are not excluded will be subject to the release of claims contained in the Settlement Agreement releasing Defendant from any claims that arise out of, concern, or relate in any way to the allegations in the Action or the TCPA, and/or which could have been raised in the Action, including, but not limited to, the use of an automatic telephone dialing system and/or prerecorded or artificial voice, and/or the delivery of voicemail messages.  (Settlement Agreement §§ 2.35-2.36, 10.1.)

**B.     The Class Notice.**

The terms of the Preliminary Approval Order are satisfied.  The information provided by Defendant's counsel establishes that there are 374,399 unique Settlement Class Members. Using the data provided by Defendant's counsel and a reverse append process, the Settlement Administrator identified 193,902 records of potential Settlement Class Members with an email or mailing address.  On July 17, 2017, the Settlement Administrator mailed 183,709 Mail Notices via USPS first-class mail to known or potential Settlement Class Members with no associated email address, but for whom a facially valid mailing address was found via the reverse append.  Also on July 17, 2017, the Settlement Administrator sent 10,193 Email Notices

to all potential Settlement Class Members for whom a facially valid email address was available.[2]  Both the Mail Notice and Email Notice included information about the Settlement Agreement, as well as instructions about how to timely submit a claim, opt out, or object to the terms thereof.  The Mail Notice and Email Notice (using an embedded link) further directed Settlement Class Members to a Settlement Website (www.NNTCPASettlement.com) and included a toll-free telephone number, both of which contain comprehensive information about the Settlement Agreement.  The Settlement Website also includes copies of the Settlement Agreement, the Long Form Notice, the Complaint, and the Court's Preliminary Approval Order, and allows Settlement Class Members to file a Claim online through the website.  (Settlement Agreement §§ 5.3(f), 6.2, 6.3, 6.4, 6.7; *see also* D.E. 61 ¶¶ 13-22, 25-29 & Exs. 2-4.)

In addition, to supplement the individual notice efforts, a Publication Notice appeared in the Sunday edition of each of two local newspapers of general wide circulation in the Naples, Florida region for two consecutive Sundays.  The Publication Notice appeared via 1/8 age ads in the Fort Myers News-Press on July 23 and July 30, 2017, and in the Naples Daily News on July 16 and July 23, 2017.  Like the Email Notice and Mail Notice, the Publication Notice included information about the Settlement Agreement, instructions about how to timely submit a claim, opt out, or object to the terms thereof, and directed Settlement Class Members to the

---

[2] For Email Notices that were returned as undeliverable, the Settlement Administrator first made at least two additional attempts to deliver the Notice by email, then mailed a Mail Notice if the Class List included a valid physical address.  (D.E. 61 ¶¶ 16, 21.)  In addition, for Mail Notices that were returned as undeliverable but for which the USPS provided a corrected mailing address, the Settlement Administrator re-mailed the Mail Notice to such corrected address.  For Mail Notices that were returned as undeliverable without a USPS-corrected address, the Settlement Administrator undertook an additional public record search in an attempt to locate a corrected address, and re-mailed the Mail Notice to such corrected address if located.  (*See id.* ¶ 21.)

Settlement Website and toll-free telephone number.  (Settlement Agreement § 6.6; *see also* D.E. 61 ¶¶ 23-24 & Exs. 5-6.)

### C.      The Claims Requirements.

Members of the Settlement Class had sixty (60) days after the Initial Notice Date, or to and including September 15, 2017, to complete and mail a physical Claim Form or submit an online Claim Form through the Settlement Website.  Settlement Class Members had to submit a Claim Form to receive any award under the Settlement.  The Claim Form was to be signed by an authorized representative for the Settlement Class Member, under penalty of perjury, identifying the telephone numbers at issue.  All Claims were to be approved as satisfying all requirements of the Settlement Agreement to be eligible to receive an award.  (Settlement Agreement § 3.5(a).)

### D.      The Settlement Class's Relief.

Defendant agreed to an injunction prohibiting future violations of the TCPA (47 U.S.C. § 227), and specifically agreed to stop using "drop voicemail" technology to leave messages in consumers' voicemail boxes without prior express consent, unless such technology is deemed not to violate the TCPA by the Federal Communications Commission, the United States Supreme Court, or the United States Court of Appeals for the Eleventh Circuit.  (Settlement Agreement § 3.7.)

In addition, Defendant agreed to a total settlement value for the class of five million seven hundred thousand ($5,700,000.00), made available by Defendant to provide either Voucher Awards to Approved Claimants, or cash by way of mailed checks.  Class Members were to elect either a $15 credit voucher or in the alternative a cash award of $4.00 on their submitted Class Forms.  The credit voucher will be freely transferrable and redeemable within

one year of the date of issuance for any service or merchandise at Defendant's dealership. (Settlement Agreement §§ 2.44, 2.46, 3.1, 3.2.)

Finally, Defendant agreed to pay the Incentive Award, Attorneys' Fees and Costs, and Settlement Administration Costs separately when due.  (Settlement Agreement §§ 4.1, 4.2, 5.2.)

### E.    Claims, Objections, Opt-Outs, and Approved Claims.

The Settlement Administrator has received 7,625 potentially valid Claims, which represents 3.93% of the total identifiable class members.

A breakdown of the Approved Claims, including the number of Approved Claimants who elected the Voucher Award versus Cash Award, will be available at the final fairness hearing from the Settlement Administrator, who is also required to file with the Court a declaration confirming disbursement of the Settlement Cash Fund within thirty (30) days of its disbursement.   (Settlement Agreement § 5.3(h).)   However, it is estimated that 363 class members elected the Voucher Award.  The Settlement Administrator received eight (8) opt-outs.  No objections have been filed.

## III.    ARGUMENT.

### A.    Governing Principles of Judicial Review.

The Federal Rules of Civil Procedure contemplate that class actions, as all other actions, may be resolved via "settlement . . . or compromise", consistent with the strong judicial policy that favors settlement agreements.  Fed. R. Civ. P. 23(e).[3]  At the final approval stage, following

---

[3] *In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits.  Complex litigation . . . can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.  Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements in all types of litigation, not just class actions." (citation omitted)); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)

notice and sufficient time for class members to object and otherwise be heard, the Court determines whether the settlement "'is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also* Fed. R. Civ. P. 23(e)(1).

In this regard, the Court may rely on the judgment of experienced counsel for the parties, considering the following factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Id.*; *accord Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011); *see also Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("In considering the settlement, the district court may rely upon the judgment of experienced counsel for the parties. Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." (quotation marks and citation omitted)).

Where, as here, the proposed settlement is reached prior to class certification, the Court must consider whether certification is otherwise proper—*i.e.*, in this case, whether the proposed class satisfies "numerosity", "commonality", "typicality", "adequacy", "predominance", and "superiority". Fed. R. Civ. P. 23(a),(b)(3). Certain aspects of a settlement class's certification

---

("Determining the fairness of the settlement is left to the sound discretion of the trial court and we will not overturn the court's decision absent a clear showing of abuse of that discretion. In addition, our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." (citations omitted)).

are less rigorous than in the context of a disputed certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." (citation omitted)). Thus, the overarching considerations are, once again, fairness, reasonableness, and adequacy.

> **B.      The Court Should Grant Final Approval of the Settlement Agreement.**

The Settlement Agreement satisfies the foregoing principles. While the Parties are confident in the merits of their respective positions, success via summary judgment and/or trial is opposed, uncertain, and in any event, would likely result in protracted litigation in: (a) this Court (*e.g.*, proceedings to determine whether direct to voicemail insertion technology is subject to the TCPA and whether Defendant utilized an ATDS), (b) the FCC (as to whether a direct to voicemail message is subject to the TCPA), and (c) the Eleventh Circuit Court of Appeals and/or the Supreme Court. In other words, success on the merits, which raise issues of first impression, among other things, is not guaranteed.

Plaintiff thoroughly weighed these considerations in the best interests of the class, and with the assistance of multiple knowledgeable professionals—including class counsel and experts—to reach this Settlement. The Parties' opinion—informed by an intimate knowledge of the facts ascertained through discovery and the informal exchange of documents in connection with the mediation, the applicable law, and Defendant's finances[4]—is that the terms

---

[4] As Defendant's ability to pay is an important criteria in the award of statutory damages, and consequently the decision to settle and the settlement amounts, Defendant provided financial records to the Mediator and to the Plaintiff on a confidential basis.

of the Settlement Agreement are not only fair, adequate, and reasonable, but afford real benefits to the Settlement Class.[5]

In particular, in addition to the critical injunctive relief Plaintiff obtained prohibiting Defendant's future violations of the TCPA, participating members of the Settlement Class will receive either a cash award or a voucher, providing them with both the benefit of choice and real value. *See In re Life Time Fitness, Inc. TCPA Litig.*, No. 14-2564, 2015 WL 7737335, at *1 (D. Minn. Dec. 1, 2015) (approving settlement that gave class members the choice between a cash award or a membership award); *Young v. Polo Retail, LLC*, No. 02-4546, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007) (approving the use of gift cards in large part because they are transferrable; "this enables class members to obtain cash—something all class members will find useful"); *States of New York & Maryland v. Nintendo of Am., Inc.*, 775 F. Supp. 676, 681 (S.D.N.Y. 1991) (approving a settlement awarding each class member a five dollar coupon,

---

[5] "In evaluating a settlement's fairness, 'it should [not] be forgotten that compromise is the essence of a settlement.' The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained.'" *Ass'n for Disabled Ams. V. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002) (quoting *Cotton*, 559 F.2d at 1330; *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002) (same); *see also Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-1290, 2013 WL 444619, at *6-7 (S.D. Cal. Feb. 4, 2013) (granting preliminary approval in a TCPA telephone calls case, noting: "A settlement is not judged against only the amount that might have been recovered had the plaintiff prevailed at trial, nor must the settlement provide 100% of the damages sought to be fair and reasonable. There is a 'range of reasonableness' in determining whether to approve settlement 'which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.' The adequacy of the amount recovered must be judged as 'a yielding of absolutes . . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.'" (citations omitted)).

noting that the coupons were fully transferrable and that "[c]ompensation in the form of coupons has been approved by other courts").

Approved Claimants will receive either $4.00 in cash or a credit voucher worth $15.00 in lieu of cash, based on their election on the Claim Form.  If no election was made on an Approved Claim Form, Approved Claimants will receive the Voucher Award.  The only procedural requirement for this relief was the completion and timely submission—by email or online on the Settlement Website—of a simple Claim Form, which had to be signed by an authorized representative for the Settlement Class Member, under penalty of perjury, and identify the telephone numbers at issue.

To assist Claimants in this process, the Settlement Website included a copy of the Settlement Agreement, a copy of the Long Form Notice that provides information in a "frequently-asked-questions" format, and other important information, such as the pertinent deadlines.  In addition, the Settlement Administrator established a toll-free telephone number to provide information about the Settlement Agreement and the completion and submission of claims.  Claims could be submitted via mail or online.  Thus, the Settlement Agreement provided meaningful relief *and* an effective mechanism for the Settlement Class to benefit therefrom.  Furthermore, the Settlement Class satisfied the certification requirements of a Rule 23(b)(3) settlement class (*see* D.E. 54):

*Ascertainability.*  The class definition is adequate and ensures ascertainability by virtue of its limitation to those persons and entities who have a requisite connection to the telephone numbers in the Class List.

***Numerosity.***   Numerosity is satisfied because, based on records provided by Defendant's counsel, the class included 374,399 unique individuals.  *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

***Commonality.***   Commonality is satisfied because all class members share the common issue of whether they received a non-emergency telephone call, text, or voicemail message using an automatic telephone dialing system or an artificial or prerecorded voice from Defendant.  This common factual issue among class members results in common legal questions such as: (1) whether Defendant violated the TCPA by the making of such calls or the sending of such messages; and (2) whether Defendant's conduct was willful, and subjected it to additional statutory damages under the TCPA.  *See Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001).

***Typicality.***   Typicality is satisfied because Plaintiff and the putative class members allegedly received from Naples Nissan non-emergency telephone calls and voicemail messages using an automatic telephone dialing system or an artificial or prerecorded voice on their cellular telephones.  If these allegations were proven, Plaintiff and the putative class would be entitled to nearly identical statutory damages under the TCPA.  *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004).

***Adequacy of Representation.***   Adequacy is satisfied because Plaintiff has interests that are the same as those of the other class members.  (*See, e.g.*, D.E. 39-1, ¶¶ 2-6.)  Therefore, Plaintiff has no interests antagonistic to the interests of the proposed class.  Further, proposed Class Counsel and Defendant's counsel have regularly engaged in major complex litigation,

and have had experience in class action lawsuits that are similar in size, scope, and complexity to the present case.  (*See* D.E. 52, Exs. 2, 3.)

### C.     The Eleventh Circuit's Factors Favor Approval of the Settlement Agreement.

As noted above, the Eleventh Circuit has instructed that courts should consider several factors in determining whether a class action settlement agreement should be approved.  *See Faught*, 668 F.3d at 1240 ("We have instructed the district court to consider the following factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.").  Here, each of the pertinent factors favors approval.

#### 1.     The Likelihood of Success at Trial.

While, as previously noted, each party was confident in the merits of his/its case, Defendant's motion for summary judgment, Defendant's motion to stay, and Plaintiff's motion to strike portions of Defendant's MSJ were still pending, and both Parties expected to vigorously oppose the legal issue in this case, as they did prior to settlement.  Indeed, Defendant planned to oppose the motion to defer, move to strike the expert declaration presented by Plaintiff and disqualify Plaintiff's expert, and move for a protective order regarding discovery.

Likewise, Plaintiff retained an expert at great expense to Plaintiff's counsel who opined that Defendant's "drop calls" system and usage violate the TCPA.  That expert's opinion was used in Plaintiff's already-filed opposition to Defendant's summary judgment motion, and in Plaintiff's Material Statement of Facts.  Unlike many cases, this case was heavily briefed by

both sides on the front-end and much of the work already done before the parties mediated and reached an agreement.  In addition to both sides aggressively pursuing written discovery, depositions were in the process of being set and taken had the parties not settled at mediation. Furthermore, in addition to responding to Defendant's voluminous summary judgment motion, Plaintiff had filed a lengthy brief seeking to compel additional discovery from Defendant (*see* D.E. 40), moved the Court to Defer to Defer or Deny Without Prejudice Defendant's Motion for Summary Judgment and Motion to Dismiss and Permit Additional Discovery (*see* D.E. 39), moved to strike portions of Defendant's summary judgment motion (*see* D.E. 45), filed opposition briefs to Defendant's Motion to Stay these proceedings pending a ruling on the "drop call" technology by the FCC (*see* D.E. 48), and filed a fully-brief opposition and statement of material facts in opposition to Defendant's summary judgment motion (*see* D.E. 46, 47).

And, even if Plaintiff were to prevail on each motion and the legal issue of first impression, a trial victory for Plaintiff would not necessarily mean "success;" the requested statutory liability alone is astronomical—*i.e.*, in excess of $500,000,000.00—and thus the risk of non-payment is substantial as it would put Defendant out of business and no class members would have received anything.  Simply put, had Plaintiff successfully secured a judgement on behalf of the entire class for the amount of calls made, Defendant likely would have been put out of business and no recovery would have been made whatsoever.  Thus, given these considerations and the inherent uncertainty of litigation, the "success" factor favors final approval of the Settlement Agreement.

### 2.    The Range of Possible Recovery.

Plaintiff reviewed Defendant's confidential financial information during and after the mediation.  Accordingly, the Parties agreed that monetary relief be based not only on the merits

and strength of Plaintiff's claims and Defendant's defenses, but also on an assessment of Defendant's ability to pay.  The proposed settlement structure maximized the total amount available to the Settlement Class while simultaneously considering Defendant's immediate ability to pay the class.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 103-04 (2d Cir. 2005) (outlining the terms of a settlement providing for defendants' installment payments over years); *accord Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 148-49 (S.D. Ohio 1992) (same); *In re Certainteed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 204-05 (E.D. Pa. 2014) (same).  This framework resulted in a proposal for the availability of a larger fund from which to satisfy valid claims.  At the same time, the framework diminished the risk of the Settlement Class being left without a meaningful remedy.  In sum, based on these considerations and a thorough assessment of the collectable value of a potential judgment, this factor overwhelmingly favors approval of the compromise embodied in the Settlement Agreement.

### 3. The Range of Recovery at Which Settlement Is Fair, Adequate, and Reasonable.

The foregoing discussion also impacts a consideration of this factor.  In addition to an injunction prohibiting the conduct that precipitated this action, the Settlement Cash Fund and Voucher Fund are substantial, yet an amount that Defendant can satisfy.  Moreover, the voucher award option is for a greater value than the cash award.  Furthermore, the recovery amounts set forth in the Settlement Agreement are intended to afford fair, adequate, and reasonable relief— from $4.00 in cash to $15.00 in credit vouchers—to those members of the Settlement Class who submitted valid claims.  *See Spillman v. RPM Pizza*, No. 10-349, 2013 WL 2286076, at *4 (M.D. La. May 23, 2013) (approving TCPA class settlement where class members received either a fully transferrable voucher worth $6.71 to $11.99, redeemable for a pizza, or a cash payment of up to $15); *Mendez v. C-Two Group, Inc.*, No. 13-05914, 2017 WL 1133371, at *4-

6 (N.D. Cal. Mar. 27, 2017) (approving TCPA settlement where class members received certificates valued at $10, redeemable for one-time free entry into a lounge); *In re Toys R Us-Delaware, Inc.*, 295 F.R.D. 438, 4554 (C.D. Cal. 2014) (approving class settlement where vouchers represented 5-percent of the recovery that might have been obtained).

Further, direct Class Notice was sent to 193,902 Settlement Class Members by Email Notice and Class Notice, and, to supplement the individual notice efforts, Publication Notice appeared once per week for two consecutive weeks in each of two selected local newspapers of general circulation in the Naples, Florida region.  **Zero objections were submitted**.  This claims-made settlement thus is all the more reasonable.  *See Poertner v. Gillette Co.*, 618 Fed. App'x 624, 628 (11th Cir. July 16, 2015) (affirming district court order approving class settlement, where the settlement valuation was significantly higher than the actual claims total, and ruling that a claims-made structure was fair because "the use of a claims process is not inherently suspect[.]"); *Wilson v. EverBank*, No. 14-22264, 2016 WL 457011, at *16 (S.D. Fla. Feb. 3, 2016) ("The Court is not tasked with either choosing the payment structure that it believes will provide the best possible relief to all class members or deciding whether a claims-made structure is absolutely necessary, but instead with determining whether the claims-made settlement presented is fair, reasonable, and adequate given the inherent risks and expense of further litigation."); *see also ABC Bartending School of Miami, Inc. v. Am. Chem. & Equip., Inc.*, No. 15-23142, Dkt. Nos. 119 at *7, 123 at *2 (S.D. Fla. Apr. 10, 2017) (final approval of settlement in which any monies unclaimed by the class reverted to the defendants deemed to be a "fair, reasonable, and adequate settlement in the best interests of the Settlement Class, in light of the factual, legal, practical, and procedural considerations raised in the Action."); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-60649, 2015 WL 5449813, at *14-16 (S.D. Fla. Sept. 14,

2015) (concluding that the claims-made methodology was necessary in light of the undue burden that would have been required to identify all class members using a different methodology, holding that "a claims-made settlement here offers Settlement Class members the best relief possible from this Settlement," and further noting that "a claims-made structured settlement is fair, reasonable, and adequate on its own terms").  Thus, this factor also favors final approval of the Settlement Agreement.

### 4.   The Anticipated Complexity, Expense, and Duration of Litigation.

There is little doubt that without a settlement, litigation will be lengthy, time-consuming, expensive, and most likely unsatisfying to all concerned.  Defendant's motions for summary judgment and to stay proceedings pending the FCC's determination of AATM's Petition are still pending.  Plaintiff has yet to file a motion for class certification.  If Defendant's motions are not granted, Defendant would seek certification to appeal any order denying the motions, and ultimately, if the case proceeded to trial, a multi-day jury trial would ensue to determine whether to increase the TCPA award due to willful and knowing conduct.  Appellate review would also be likely irrespective of which side prevailed.  *See Gevaerts v. TD Bank, N.A.*, No. 14-20744, 2015 WL 12533121, at *7 (S.D. Fla. Aug. 4, 2015) (recognizing "protracted litigation carried inherent risks that would necessarily have delayed and endangered Settlement Class Members' monetary recovery.   Under the circumstances, Plaintiffs appropriately determined that the Settlement . . . outweighs the possible benefits that may result from the risks of continued litigation."); *Messick v. Applica Consumer Prod. Inc.*, No. 12-60464, 2013 WL 12090321, at *2 (S.D. Fla. Oct. 7, 2013) (approving settlement where "Plaintiff and the Settlement Class Members face significant risks in the Litigation, the possibility of any greater ultimate recovery in litigation is highly speculative, and any such

17

recovery would occur only after considerable additional delay").  As is readily apparent, this factor also favors final approval of the Settlement Agreement.

## 5.     Opposition to the Settlement.

This factor overwhelmingly favors final approval of the Settlement Agreement.  Direct notice was sent to over 190,000 potential members of the Settlement Class, and supplemented with Publication Notice in the Naples, Florida region.  In addition, pursuant to the Class Action Fairness Act, notice was provided to the appropriate attorneys general for the United States and States.  (D.E. 53.)  No one has objected to the Settlement Agreement.

This Court, like others, "considers the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important indicator as to its reasonableness and fairness." *Hall v. Bank of Am., N.A.*, No. 12–22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014).  Obviously, "a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable." *Saccoccio v. JP Morgan Chase Bank, N.A*., 297 F.R.D. 683, 694 (S.D. Fla. 2014).

Here, none of the class members objected to the proposed settlement.  Nor did a single State Attorney general or regulator after the CAFA notices were timely mailed out.  Lack of objections is a significant factor in determining whether the proposed class settlement is reasonable to the class as a whole.  *See Allapattah Servs. v. Exxon Corp*., 2006 U.S. Dist. Lexis 88829 (S.D. Fla. 2006); *see also Wal-Mart Stores, Inc. v. Visa USA, Inc*., 396 F.3d 96, 118 (2d Cir. 2005) (noting that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Camp v. City of Pelham*, 2014 U.S. Dist. Lexis 60496, at *11 (N.D. Ala. May 1, 2014) (fact that no objections were received "points

to the reasonableness of [the] proposed settlement and supports its approval" (citations omitted)); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (stressing that "[i]t has repeatedly been held that one indication of the fairness of a settlement is the lack of or small number of objections.""). This Settlement has met with near-universal approval. Further, because only eight people asked to "opt out" of the Settlement, the participation rate among the class was over 99%. This also indicates acceptance of the settlement terms among the entire settlement class.

These responses of class members to the Settlement[6] are powerful indicia that the Settlement is fair, reasonable and adequate, and deserves final approval. *See Hall*, 2014 WL 7184039, at *5 (where objections from LPI settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg*, Inc., No. 13–60749, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," combined with few objections to LPI class settlement, "such facts are overwhelming support for the settlement"); *Burrows v. Purchasing Power, LLC*, No. 12–22800, 2013 WL 10167232, at *7 (S.D. Fla. Oct. 7, 2013) ("No members of the Settlement Class

---

[6] "[C]ourts in this district have approved claims-made settlements where the participation rate was very low." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 696 (S.D. Fla. 2014) (approving 10.3 million-member settlement class when less than 1.1% of total class members filed claims). Single-digit claims rate settlements also are routinely approved outside this District. *See, e.g.*, *In re Online DVD—Rental Antitrust Litig*., 779 F.3d 934, 944–45 (9th Cir. 2015) (approving 35 million-member settlement class when only 1.183 million—less than 4%—filed claims; "settlements have been approved where less than five percent of class members file claims"); *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 329 n.60 (3d Cir. 2011) (*en banc* ) (noting evidence that claims rates in consumer class settlements "rarely" exceed 7%, "even with the most extensive notice campaigns").

oppose the settlement, nor have any governmental agencies filed opposition"). Therefore, this entire factor weighs heavily in favor of final Court approval of the Settlement.

> **6.    The Stage of Proceedings at Which the Settlement Was Achieved.**

The Settlement Agreement is the product of intensive arms-length negotiations, and was achieved following discovery and summary judgment briefing by the Parties, and expert analysis by Plaintiff.  The Parties were assisted at mediation by Bruce Friedman, a nationally recognized TCPA class action mediator.  Therefore, the Settlement Agreement is based on informed assessment of the facts, the pertinent law, and the circumstances impacting the satisfaction of a potential judgment.  Thus, this final factor also favors final approval of the Settlement Agreement.

## IV.    CONCLUSION.

For all the foregoing reasons, Plaintiff respectfully submits that final approval of the Settlement Agreement is warranted.  Thus, Plaintiff requests that the Court enter an order in the form appended hereto as Exhibit 1 that, *inter alia*:

1. Grants final approval of the Settlement Agreement and enters judgment accordingly;

2. Certifies the Settlement Class;

3. Appoints Plaintiff as settlement class representative, and his respective counsel as settlement Class Counsel;

4. Grants Plaintiff's Unopposed Motion for Fees and Costs and an Incentive Award; and

   Grants any other relief deemed just and proper to effect the Settlement Agreement.

**Rule 7.1(a)(3) Conference**

Counsel for Plaintiff conferred with counsel for Defendant on the substance of this motion and all Parties have agreed to the relief requested herein.

DATED:  October 25, 2017

By: */s/ Brandon J. Hill*

Brandon Hill (Florida Bar No. 37061)
bhill@wfclaw.com
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Tel. 813.224.0431
Fax 813.229.8712

Chris Miltenberger (admitted *pro hac vice*)
chris@crmlawpractice.com
1340 N. White Chapel, Suite 100
Southlake, Texas 76092-4322
Tel. 817.416.5060
Fax.817.416.5062

Attorneys for Plaintiff
TOM MAHONEY AND THE CLASS

**Certificate of Service**

I hereby certify that on October 25, 2017 a true and correct copy of the foregoing was filed with Court using the Court's CM/ECF system.  The CM/ECF system electronically served all counsel or parties of record on the Service List below.

By:     */s/ Brandon J. Hill*

Brandon J. Hill

Service List

| | |
|---|---|
| Brandon Hill<br>Email: bhill@wfclaw.com<br>Wenzel Fenton Cabassa, PA.<br>1110 North Florida Ave., Suite 300<br>Tampa, Florida 33602<br>Direct No.: 813-337-7992<br>Main No.: 813-224-0431<br>Facsimile: 813-229-8712<br>Attorney for Plaintiff Tom Mahoney | Chris R. Miltenberger<br>chris@crmlawpractice.com<br>The Law Office of Chris R. Miltenberger, PLLC<br>1340 N. White Chapel, Suite 100<br>Southlake, Texas 76092-4322<br>817-416-5060 (office)<br>817-416-5062 (fax)<br>Attorney for Plaintiff Tom Mahoney |
| Paul J. Sodhi<br>PSodhi@BlankRome.com<br>Blank Rome LLP<br>Broward Financial Centre<br>500 East Broward Boulevard<br>Suite 2100<br>Fort Lauderdale, FL 33394<br>Tel.     954.512.1800<br>Fax     854.512.1818<br>Attorneys for Defendant: TT of Pine Ridge, Inc. | Harrison M. Brown<br>HBrown@BlankRome.com<br>Blank Rome LLP<br>2029 Century Park East<br>6th Floor<br>Los Angeles, CA 90067<br>Tel.     424.239.3400<br>Fax.     424.239.3434<br><br>Attorneys for Defendant: TT of Pine Ridge, Inc. |
| Ana Tagvoryan<br>atagvoryan@blankrome.com<br>Blank Rome LLP<br>2029 Century Park East<br>6th Floor<br>Los Angeles, CA 90067<br>Tel.     424.239.3400<br>Fax.     424.239.3434<br>Attorneys for Defendant: TT of Pine Ridge, Inc. | Patricia E. Lowry<br>patricia.lowry@squirepb.com<br>SQUIRE PATTON BOGGS (US) LLP<br>1900 Phillips Point West<br>777 South Flagler Drive<br>West Palm Beach, Florida 33401<br>Telephone: 561-650-7214<br>Facsimile: 561-655-1509<br>Attorneys for Defendant: TT of Pine Ridge, Inc. |